IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ASPDAL | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:25-cv-00243 |
| | § | |
| v. | § | JURY |
| | § | |
| TARGET CORPORATION | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, CHRISTOPHER ASPDAL ("Aspdal" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of TARGET CORPORATION ("Target" or "Defendant"), and for cause of action, would show as follows:

### I. INTRODUCTION

1. This is an employment discrimination lawsuit alleging harassment, disparate treatment, and wrongful termination on the basis of age and race. Claims are presented under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964 (Title VII), and Chapter 21 of the Texas Labor Code (Chapter 21). Plaintiff alleges that he was subject to unlawful discrimination at work because of his age and race, harassed, and ultimately terminated. As a result of Defendant's violations, Plaintiff has suffered substantial damages. Plaintiff seeks all legal and equitable remedies under the laws cited herein.

### II. PARTIES

2. Plaintiff Christopher Aspdal is a citizen of Texas residing in Houston, Harris County, Texas.

3. Defendant Target Corp. is a Minnesota Corporation having its principal place of business in Minneapolis, MN. It may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

### III. JURISDICTION AND VENUE

4. The Court has original jurisdiction over this matter because this civil action arises under the laws of the United States. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C § 1367.

5. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 1391(b)(2)-(3); § 1391(d).

### IV. FACTS

#### Target Corporation

6. Target is a global business that operates retail stores or department stores. Target has substantial business operations in Texas.

7. Target has been in business for over 100 years.

8. According to public (SEC) filings, Target had over $107 billion in sales in 2022.

9. Target has implemented at least two distinct policies and programs that either promote disparate treatment of its employees or result in disparate impact. The policies result in race and age discrimination.

10. In a public (SEC) filing (10-K March 8, 2023), Target states that a pillar of its strategy includes "[l]everaging our size and scale to benefit people, the planet, and our business, primarily through Target Forward, our enterprise sustainability strategy." (ESG policy).

11. In the same filing, Target states that it "set[s] company-wide DE&I goals to drive progress in these areas." (DEI policy). "These areas" as used in Target's SEC filing means

promoting hiring and promotion of "ethnically diverse" persons. Target's DEI policy results in (or even encourages) disparate treatment of white employees and older employees – either by design or as an unavoidable result of the policy's stated goals.

12. Target boasts on their website that they strive to be a leader in DEI, an initiative and policy that by definition requires discrimination based on protected characteristics.

**Target aims to drive equitable opportunities for advancement and engagement by continuing to be a leader in diversity, equity, inclusion and belonging.**



**Foundations we've laid:**

- Established the **Racial Equity Action and Change (REACH) committee** to accelerate our diversity, equity and inclusion strategy.
- Launched next three-year cycle of our enterprise diversity, equity and inclusion goals.
- Our U.S. team members volunteered 1 million hours in 2023, representing industry-leading community impact efforts.
- Target aims to create equity through benefit access and affordability to enhance total well-being.

*See* https://corporate.target.com/sustainability-governance/strategy-target-forward (Last accessed January 20, 2025).

13. Target's own website promotes "inclusion" of its team members (employees), but notably absent from Target's own site is reference to its white employees or older employees who are denied recognition in Target's public policies and investor resources.

### Explore Team Members & Guests

| | | | |
|---|---|---|---|
| **Asian Team Members & Guests**<br>Visit section > | **Black Team Members & Guests**<br>Visit section > | **Hispanic & Latino Team Members & Guests**<br>Visit section > | **Native American & Indigenous Team Members & Guests**<br>Visit section > |
| **LGBTQIA+ Team Members & Guests**<br>Visit section > | **Military & Veteran Team Members & Guests**<br>Visit section > | **People with Disabilities**<br>Visit section > | **Women Team Members & Guests**<br>Visit section > |

*See* https://corporate.target.com/sustainability-governance/our-team/diversity-equity-inclusion/team-members-guests (Last accessed January 20, 2025).

14. The same page of the Target website promotes its business councils. *See* id.

15. Notably absent from the business councils are representation for Target's older and/or white employees. *See* id.

16. A search of Target's public (SEC) filings indicate that Target's reference to its ESG and DEI policies began in 2022 or 2023. Around the time Plaintiff Christopher Aspdal began to face unlawful discrimination at work.

### Christoper Aspdal

17. Aspdal is a 54-year-old white male. At the time of his termination from Target, he was 53 years old.

18. Aspdal began working for Target in the year 2000. At the time of his termination, he had nearly a quarter-century work experience at Target. At all times applicable hereto, Aspdal was competent and qualified to perform his job.

19. Most recently, and at the time of his termination, Aspdal held the position of Specialty Sales Executive at the Target store (#T-0955) on San Felipe in Houston, Texas.

20. In approximately early 2023, the San Felipe Target store had a new Store Director named Termaine Oten (black male, under age 40).

21. Although Aspdal received positive performance reviews and promotions for most of his career at Target, that all changed when Oten became Store Director.

22. After Oten's arrival, and continually until Aspdal's termination, Aspdal was subjected to repeated comments about his older age and singled out as a white employee.

23. In fact, at the time of his termination, Aspdal was the only white management employee at Store #T- 0955.

24. The derogatory age comments directed at Aspdal were frequent. For example, district manager Syed Rizvi (Asian male) pulled Aspdal into the office one day and asked him if he thought the "store was too fast paced" for Aspdal and asked Aspdal if he wanted to transfer to "a slower, less stressful store." Rizvi's comments to Aspdal were perplexing given his history of promotions and positive performance evaluations. Rizvi concluded the meeting by asking again if "a store with less volume…would be an easier fit for [Aspdal]."

25. These comments were immediately recognizable as age-related comments. As a 53-year-old man, Aspdal was one of the oldest store employees. Around the time of Oten's arrival, the store embarked on a practice of intentionally hiring and promoting younger, non-white employees. Aspdal was not in the demographic Target wanted at the San Felipe store.

26. Another example was when ETL-Guest Experience Crystal Wade (black female, under age 40) told Aspdal she was "surprised how quickly he could move through the sales floor." While at least partially complimentary, Wade's comments indicated age bias and prejudice.

27. One time during an overnight shift, ETL-GM Omar Sims (black male, age under 40) asked Aspdal if working late was "too much of a strain on him."

28. Some of the age-related comments were direct and unquestionably biased. For example, when GM Team Leader Jennifer Carrion (black female, younger) said to Aspdal (while he was unloading a truck), "Alright old man, look at you getting this truck done."

29. Beauty Team Leader Jayden Thompson (black female, younger) pulled Aspdal aside and informed him that store employees and leaders didn't believe Aspdal was "in the know" about younger trends and what was happening in the beauty market.

30. Another Target employee, Tiba Hussein (Asian female, younger) told Aspdal that she believed he was "overworking himself for his age."

31. Aspdal wears reading glasses. On multiple occasions, too many to list, members of store management would make comments about Aspdal's use of glasses, commenting, "oh you have your old man glasses on again." This is direct evidence of age discrimination.

32. Each of the foregoing examples occurred after Oten's arrival at the store. There was an almost immediate mood change upon his arrival. Aspdal, who was previously appreciated by management, was now apparently an "old" burden and outsider as the "old" white guy.

33. On a daily basis, Aspdal was excluded from meetings and lunch conversations that were normally attended by persons in Aspdal's position. Aspdal was the only white manager (Executive), and only managers of color were included in these meetings. Oten determined who was invited.

34. The exclusion was so obvious that Aspdal's direct report once told him, "looks like the club is leaving you out again." The "club" in this instance was a group of younger persons of color, led by Oten. This group included Omar Sims, Crystal Wade, and Jeffery Miller (black male, younger).

35. When placing Aspdal squarely in the outgroup and peppering him with age-related discriminatory comments did not bring about the desired result (Aspdal's resignation), Oten took a new approach.

36. Despite Aspdal having decades of experience and positive feedback from Target, Oten suddenly decided that Aspdal was failing to meet expectations. In approximately late 2023, Oten began to counsel Aspdal for alleged performance deficiencies that Aspdal denied and denies to this day.

37. The counseling continued, although it seemed to be purely perfunctory in nature, as if Oten was "building a case" against Aspdal that was not supported by any actual performance deficiency.

38. In March 2024, Oten placed Aspdal on a "Performance Improvement Plan" or PIP. The purpose of a PIP is to give an employee an opportunity to address alleged performance deficiencies. Although the PIP called for regular check-ins with a manager, none were scheduled, and six weeks later Aspdal was terminated.

39. Target and Oten were never serious about Aspdal "improving" under the PIP. In fact, Oten said to Aspdal, "you should probably start looking [for another job]; they want you gone." This damning comment was made before the PIP was even implemented.

40. Oten arrived at the San Felipe Target store having been instructed by Target that the company preferred younger and/or non-white employees, in line with their DEI and ESG policies described above.

41. There simply was no place for older, white workers at the retail management level at Target. Workers fitting that description, like Aspdal, were denied promotions, harassed, and ultimately terminated because of their age and/or race. One example of this disparity is Target employee Laurice Black (black female, under 40 at time) who was promoted two weeks before Aspdal's termination even though she had repeated performance deficiencies that were intentionally overlooked by Oten.

42. Aspdal was replaced by Caylin Heiman (white female), a person under the age of forty.

43. At the time of Aspdal's termination, Target had revised his position's job description to state that a good fit for the position would like working in "a fun and energetic environment [that] makes you excited." Fun and energetic being code for older persons need not apply.

44. Aspdal has presented his claims via a charge of discrimination filed with the EEOC and Texas Workforce Commission, Civil Rights Division (the "Charge" – 460-2024-06705).

45. The Charge alleged race and age discrimination and specifically referenced Target's practice and policy concerning discrimination.

46. The EEOC issued a "right to sue" letter and this complaint was timely filed thereafter.

47. Finding work after being employed by Target for so long has been challenging for Aspdal. Although he takes his job search seriously, he has not been able to find comparable employment as of the date of filing of this complaint.

48. As a result of the discrimination he faced, Aspdal has experienced severe mental anguish and related physical symptoms.

49. As a direct and proximate result of Target's age and race discrimination, Aspdal has suffered damages in the form of lost pay and benefits (front and back), mental anguish, and loss of reputation.

50. In addition, Target acted intentionally, willfully, and/or with reckless indifference and/or malice, intentionally failing to adhere to the protections afforded by the ADEA, Title VII, and Chapter 21 of the Texas Labor Code.

51. Aspdal is therefore entitled to recover liquidated and/or exemplary damages as permitted by law.

## V. CAUSES OF ACTION

### COUNT I – AGE DISCRIMINATION UNDER ADEA

52. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

53. Aspdal was within the protected class (age 40 or older) at the time of the harassment he experienced and at the time his termination.

54. Aspdal was fully competent and qualified for his position.

55. Aspdal was terminated because of his age over forty.

56. Aspdal was replaced by a younger person, a person outside of the protected class.

57. Aspdal's claim under the ADEA is for both harassment because of age (hostile environment) and wrongful termination because of age. Aspdal faced repeated discriminatory comments based on age at work.

58. Target's ADEA violation was willful. Target was aware of Aspdal's rights under the law and intentionally violated them.

59. Accordingly, Aspdal is entitled to maximum damages under the ADEA including liquidated damages.

60. Aspdal is entitled to an award of his attorneys' fees and costs.

### COUNT II – AGE DISCRIMINATION UNDER CHAPTER 21

61. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

62. Target committed an unlawful employment practice when they harassed Aspdal at work (hostile environment) because of his age over forty and ultimately terminated his employment because of his age over forty.

63. As stated above, Aspdal was qualified, was part of a protected class (over 40), and was replaced by a younger (under 40) employee.

64. Aspdal is entitled to recover exemplary or punitive damages under Chapter 21 because Target engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of Aspdal.

65. Aspdal also seeks and award of his attorneys' fees and costs.

### COUNT III – RACE DISCRIMINATION UNDER TITLE VII

66. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

67. An employer's decision to terminate an individual's employment violates Title VII when that decision was based on race, whether that race be white or black. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

68. Target violated Aspdal's Title VII rights in two ways: (i) by subjecting Aspdal to unwelcome harassment affecting a term, condition, or privilege of his employment due to his white race/color (hostile working environment); and (ii) by terminating Aspdal's employment because of his race/color.

69. Aspdal seeks all damages available under Title VII and an award of his attorneys' fees and costs.

## COUNT IV – RACE DISCRIMINATION UNDER CHAPTER 21

70. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

71. Target committed an unlawful employment practice when they discharged Aspdal because of his white race/color.

72. Target further committed an unlawful employment practice when they discriminated against Aspdal in connection with compensation or the terms, conditions, or privileges of employment because of his race – by excluding him from management meetings and subjecting him to unwarranted or false performance scrutiny. Also, by subjecting him to a false and pretextual PIP.

73. Target's unlawful employment practices on account of race and/or color also adversely affected Aspdal as stated above.

74. Target acted with malice or with reckless indifference to the state-protected rights of Aspdal entitling him to punitive damages.

75. Aspdal seeks all damages available under Chapter 21 and an award of his attorneys' fees and costs.

### COUNT V – DISPARATE IMPACT DISCRIMINATION (AGE & RACE)

76. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

77. As stated above, Target's ESG and DEI policies unfairly punish white employees and older employees. Target's unlawful policies unfairly and disparately affect white and older (over 40) workers by limiting (or eliminating) their promotion opportunities and incentivizing their termination to make room for what Target believes are more desirable employees. These policies and practices, which at times appear facially neutral, result in a disparate and discriminatory impact for Target's white employees and older employees – like Aspdal. Accordingly, Aspdal requests judgment that Target's ESG and DEI policies and practices result in disparate, discriminatory impact on the basis of race and age.

### VI. DAMAGES & ATTORNEYS' FEES

68. As a result of Defendant's conduct, Aspdal seeks the following relief: All actual, compensatory, and economic damages resulting from Defendant's violations, back pay and benefits, front pay and benefits, mental anguish damages, damages for loss of reputation, liquidated damages (where authorized by law), punitive damages (where authorized by law), attorneys' fees, costs, and expert witness fees.

### VII. JURY DEMAND

69. Aspdal requests a trial by jury on issues triable by a jury in this case.

## VIII. PRAYER

WHEREFORE, Plaintiff Christopher Aspdal respectfully prays that upon final trial hereof, the Court enter judgement in favor of Plaintiff, that this Court award all actual, compensatory, and economic damages allowed by law; liquidated damages; punitive damages; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Dated:   January 20, 2025

Respectfully submitted,

THE VERDE LAW FIRM, PLLC

/s/ Joshua A. Verde
Joshua A. Verde
Attorney-In-Charge
State Bar No. 24077590
Fed. ID No. 1760723
Ashley B. Reilly
State Bar No. 24114999
Fed. ID No. 38442772
12012 Wickchester Ln, Suite 330
Houston, TX 77079
Phone: 713-909-4347
Fax: 713-588-2431
josh@verde-law.com

ATTORNEYS FOR PLAINTIFF
CHRISTOPHER ASPDAL